## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **THE NECK HAMMOCK, INC.,** | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | **Case No. 2:20-CV-287-DAK-DBP** |
| **DANEZEN.COM, HENSUI ZHANG, OPTINALY.COM, JINGFEI GUO, PRETTYDIARY.STORE,** | **Judge Dale A. Kimball** |
| Defendants. | **Magistrate Judge Dustin B. Pead** |

This matter is before the court on Defendants' Motion to Dismiss and Motion to Set Aside Default [ECF No. 28].  On October 7, 2020, the court held a hearing on the motion by Zoom video conferencing because of the Covid-19 pandemic.  At the hearing, Brian N. Platt and Brent P. Lorimer represented Plaintiff, and Brenda E. Weinberg represented Defendants Danezen.com, OPtinaly.com, PrettyDiary.store.  Having fully considered the parties' written submissions, oral arguments, and the law and facts related to the motions, the court enters the following Memorandum Decision and Order.

## BACKGROUND

The Neck Hammock, Inc. ("NH") brought this action against Defendants for patent, copyright, and trademark infringement, counterfeiting, and unfair competition.  NH alleges that Defendants advertised and sold infringing counterfeit products using NH trademarks and copyrighted images on commercial websites, using NH's own promotional materials and making

millions of dollars.  Defendants are companies organized and existing under the laws of China, with their principal places of business in various cities in China.  Defendant PrettyDiary.store also has an address in Scottsdale, Arizona.

Based on NH's preliminary discovery, Defendants allegedly sold at least 132 infringing NH products to Utah customers using NH's trademarks and copyrighted images.  Danezen.com allegedly had 82,491 transactions with U.S. residents between March 24, 2020, and May 13, 2020.  Of these transactions, allegedly 8,355 were sales of counterfeit NH products to U.S. residents and 91 of those counterfeit products were sold to Utah residents.  Optinaly.com allegedly had 9,343 transactions with U.S. residents between April 9, 2020, and May 13, 2020.  Of these transactions, allegedly 85 of these were sales of counterfeit NH products to U.S. residents and 3 of those were to Utah residents.  PrettyDiary.store allegedly had 88,117 transactions with U.S. residents between January 5, 2019, and May 13, 2020.  Of these transactions, allegedly 2,966 were sales of counterfeit NH products and 38 of those products were sold to Utah residents.

NH claims that faced with Defendants aggressive sales of alleged knock-off devises, it brought the present lawsuit and sought to obtain preliminary injunctive relief to stop the irreparable harm it was suffering.  NH asked this court to authorize service of process by email under FRCP 4(f)(3), and the court granted the request.  NH effected service of the Summons and Complaint and Temporary Restraining Order on May 7, 2020, and filed its certificate of compliance on May 13, 2020.

On May 15, 2020, Danezen wrote to NH's counsel, acknowledging receipt of the papers. On May 19, 2020, a Chinese lawyer for Defendants wrote to NH's counsel stating that service

was not proper and it was not "sufficient or convenient" for Defendants to join or attend the proceedings before this court.  NH did not attempt to serve Defendant through the Hague Convention.  On May 27, 2020, NH's counsel responded that NH intended to proceed according to the Federal Rules of Civil Procedure.

On May 29, 2020, one day after the 21-day period to respond to the Complaint served by email, NH moved for entry of default with the Clerk of Court.  That same day, Defendants obtained counsel in Utah.  On June 4, 2020, the Clerk of Court entered default pursuant to FRCP 55(a).  That same day, Utah counsel filed an appearance on behalf of Defendants even though they did not receive a retainer until June 8, 2020.  On June 16, 2020, Defendants' counsel filed the instant motion seeking to set aside the default and dismiss NH's Complaint.

## DISCUSSION

### Defendants' Motion to Dismiss & Motion to Set Aside Default

Defendants bring the present motions, arguing that the court should set aside the Clerk of Court's entry of default and dismiss NH's Complaint for insufficient service of process and lack of personal jurisdiction.

### 1.  Motion to Set Aside Default

Defendants argue that the court should set aside entry of default because they can demonstrate  good cause.  The good cause standard for setting aside entry of default under Federal Rule of Civil Procedure 55(a) is lower than the standard for setting aside default judgment.  *Polanski v. Colo. Dep't of Transp.*, 198 Fed. Appx. 684, 685 (10th Cir. 2006).  NH, however, asserts that the court should refuse to set aside default because Defendant's conduct was culpable.

The parties in this case appear to have a genuine and good-faith dispute as to whether

service of process was proper.  Defendants should have appeared in this action and raised the service issue prior to the court's entry of default.  However, Defendants did so shortly after the Clerk of Court's entry of default and prior to default judgment.  Defendants attorneys almost immediately started notifying NH that it did not believe that service was proper.  While it would have been more advisable to appear and defend the action sooner, the delay was not significant. The court does not believe this conduct was inexcusable.  Moreover, defaults are disfavored and courts prefer to hear matters on their merits.  *Heber v. United States*, 145 F.R.D. 576, 577 (D. Utah 1992).  The court, therefore, grants Defendants' motion to set aside default.

## 2.  Service of Process

Next, Defendants argue that NH's service of Defendants by email was improper under Federal Rule of Civil Procedure 4(f).  Under Federal Rule of Civil Procedure 12(b)(5), a complaint can be dismissed when service of process is insufficient.  *Swallow v. S. Jordan City*, No. 2:14-CV-881-DN, 2017 U.S. Dist. LEXIS 94848, at *7 (D. Utah  June 20, 2017). "Insufficient service of process means the court lacks personal jurisdiction over a defendant." *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794 (10th Cir. 2008) (because service was insufficient, district court did not have personal jurisdiction over defendant).

Rule 4 sets forth the acceptable methods for service of process of foreign business entities, such as Defendants.  Fed. R. Civ. P. 4.  "Unless federal law provides otherwise," a corporation that is to be served "at a place not within any judicial district of the United States" must be served "in any manner prescribed by Rule 4(f) for serving an individual."  Fed. R. Civ. P. 4(h)(2).  Rule 4(f) provides that unless federal law requires otherwise,

> an individual . . . may be served at a place not within any judicial district of the
> United States:
> (1) by any internationally agreed means of service that is reasonably calculated to

4

give notice, such as those authorized by the Hague Convention on the Service
Abroad of Judicial and Extrajudicial Documents;
(2) if there is no internationally agreed means, or if international agreement
allows but does not specify other means, by a method that is reasonably
calculated to give notice . . . ; or
(3) by other means not prohibited by international agreement, as the court
orders.

Fed. R. Civ. P. 4(f).

In this case, the parties dispute whether Rule 4(f) required NH to serve Defendants in

compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Service

Convention") under Rule 4(f)(1) before asking the court for court-ordered service under Rule

4(f)(3). The United States and China are both parties to the Hague Service Convention. *See*

Hague Conference on Private International Law website,

https://www.hcch.net/en/instruments/conventions/status-table (last visited Oct. 26, 2020)

(indicating treaty entered into force for China and United States). Article 1 of the Hague

Service Convention states that it "shall apply in all cases, in civil or commercial matters,

where there is occasion to transmit a judicial or extrajudicial document for service abroad."

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). "This language is

mandatory" and "compliance with the Convention is mandatory in all cases to which it

applies." *Id.*

However, Article 1 of the Hague Convention also provides that it does not apply

"where the address of the person to be served with the document is not known." Hague

Service Convention, 20 U.S.T. 361 (1969).[1] In this case, NH's Motion for Service By

---

[1] In addition, in the "case of urgency," the Convention permits courts to enter
"provisional or protective measures," and such measures have been interpreted to include

5

Alternate Means requested service by email because NH had "been unable to determine Defendants' address after a reasonable investigation." ECF No. 4 at 10. NH supported that assertion with the Declaration of NH's attorney Brian Platt. *Id.* Therefore, NH's compliance with the Hague Service Convention in this case was not mandatory because, by its terms, it did not apply. Given that the Hague Service Convention did not apply, NH did not need to comply with Rule 4(f)(1) before asking for alternative service under Rule 4(f)(3).

The court agrees with *Rio Props., Inc. v. Rio Internat'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002), that Rule 4(f) does not create a hierarchy of preferred methods of service of process. Rule 4(f) could have easily been drafted to require a party to comply with Rule 4(f)(1) or (2) before seeking service under Rule 4(f)(3), but nothing in the text or structure of Rule 4(f) suggests that such a requirement exists. Rule 4(f) merely includes three numbered subsections separated by the conjunction "or." "By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Id.* "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *Id.* Thus "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'"; "[i]t is merely one means among several which enables service of process on an international defendant." *Id.* Moreover, other courts have recognized that the Hague Service Convention "does not displace Rule 4(f)(3)." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir.), *cert. denied*, 139 S. Ct. 480 (2018).

The court agrees with these courts' interpretations of Rule 4(f). The court notes that

---

"special forms of service." Art. 15; Notes of Advisory Comm. on 1993 Am. to R. 4, subdivision (f)(3).

this interpretation of Rule 4(f) further makes sense in light of a case such as this one where, even though the two countries are signatories to the Hague Service Convention, the Convention specifically states that it does not apply because Defendants addresses were not known.  NH submitted evidence to the court that it could not reasonably obtain Defendants' addresses and properly sought service under Rule 4(f)(3).  Accordingly, the relevant issue is whether the email service the court allowed met the requirements of Rule 4(f)(3).

Rule 4(f)(3) permits courts to order any means of service that is "not prohibited by international agreement."  Fed. R. Civ. P. 4(f)(3).  "Not prohibited by international agreement" includes not prohibited by the Hague Service Convention.  *See Rio Props.*, 284 F.3d at 1015 n.4.  This is somewhat circular given that NH sought service under Rule 4(f)(3) because the Hague Service Convention did not apply.  Nonetheless, courts applying Rule 4(f)(3) look to whether the Hague Service Convention prohibits the method of service requested.  Defendants assert that because email service is not consistent with the enumerated methods of service in the Hague Service Convention, service in this case was improper.  But "not consistent" is not the standard.  The standard is whether it is prohibited.  The Tenth Circuit has held that "the relevant inquiry under Rule 4(f)(3) is . . . . whether the alternative service method in question is 'prohibited' by the agreement."  *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294 (10th Cir. 2020).

The Hague Service Convention does not expressly prohibit email service because email did not exist at the time the Convention was drafted.  However, Defendants contend that China's objection to Article 10(a) of the Convention, which permits service "by postal channels, directly to persons abroad," is tantamount to an objection to email service.  Courts

are split as to whether an objection to Article 10(a) is an objection to service by email.  *Anova Applied Elecs., Inc. v. Hong Kong Grp., Ltd.*, No. 17-12291-FDS, 2020 U.S. Dist. LEXIS 13063, at *13-15 (D. Mass. Jan. 24, 2020).   Although courts are split on the issue, the majority have concluded that a country's objection to Article 10(a) does not equate to an objection to email service.  *Patrick's Rest, LLC v. Singh*, Case No. 18-CV-764-ECT-KMM, 2019 WL 121250, at *3 (D. Minn. Jan. 7, 2019).  Defendants ignore these decisions in favor of dicta in two Supreme Court cases, but neither *Water Splash* nor *Schlunk* considered Rule 4(f)(3) or service by email.  Although the cases are generally instructive, they are not specifically relevant to the issue before the court.

Defendants argue that a country that would object to service by postal channels would also object to service by email because it is a similar form of transmittal.  However, Defendants incorrectly conflate service by traditional mail with service by email.   Email service and traditional mail service differ significantly in relation to service of process.  *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) ("these forms of communication differ in relevant respects").   "In many ways, e-mail is not only different from, but also superior to, traditional mail.  It is considerably faster, indeed virtually instantaneous.  It is substantially more reliable, particularly compared to international mail.  Its 'arrival . . . at a destination address may be more readily tracked.' It allows a recipient to promptly reply to either confirm or deny that the sender has the correct address."  *Anova*, 334 F.R.D. at 471 (quoting *Sulzer Mixpac*, 312 F.R.D. at 332).  Given these advantages, a country that objected to the weaknesses associated with service by traditional mail would not necessarily object to service by email. Accordingly, the court cannot conclude that China's objection to service by traditional mail under Article 10(a) is also an objection to service by

email.  The court, therefore, concludes that email service is not prohibited by international agreement in this case.

Under Rule 4(f)(3), most courts also require that the method of service comport with constitutional notions of due process.  *See., e.g., Nagravision* 882 F.3d at 498; *Rio Props.*, 284 F.3d at 1016-17; *Sulzer Mixpac*, 312 F.R.D. at 332.  To meet due process requirements, the method of service must be "reasonably calculated to provide notice and an opportunity to respond."  *Rio Props.*, 284 F.3d at 1017.  The court agrees with these fellow courts that email service can comport with constitutional notions of due process.

In this case, NH contacted Defendants at the email addresses that Defendants designated on their websites for contacting them.  Defendants engage in online business and electronic commerce and regularly communicate with customers across the globe through these email addresses.  Because Defendants do international business with those email addresses, it was reasonable to expect that Defendants would learn of the suit against them by utilizing those email addresses.  *See Sulzer Mixpac*, 312 F.R.D. at 332.  Although Defendants claim that the immediate email response NH received was only a general business response, Defendants' legal counsel responded soon thereafter.  The court, therefore, finds that NH's emails adequately notified Defendants of the action and comported with constitutional notions of due process.

Because NH served the Complaint on Defendants as specifically ordered by this court and that service was not prohibited by international agreement, the court concludes that NH's service was proper under Rule 4(f)(3).  The court, therefore, denies Defendants' motion to dismiss based on improper service of process.

### 3.  Personal Jurisdiction

Defendants further assert that this case should be dismissed because they are not subject to personal jurisdiction in Utah.  The parties agree that Defendants are not subject to general jurisdiction in Utah because it is not "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  However, the parties dispute whether this court has specific jurisdiction over Defendants with respect to NH's claims in this case.

NH must make a prima facie showing of personal jurisdiction.  *Old Republic Ins. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).  The court accepts the well-pled allegations of the plaintiff's complaint as true unless the defendant contradicts those allegations in affidavits.  *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).  If the parties submit conflicting affidavits, the court resolves any factual disputes in the plaintiff's favor.  *Id.*

Defendants take issue with the fact that NH's Complaint does not list Defendants' sales in Utah, but affidavits are routinely considered in relation to motions to dismiss for lack of personal jurisdiction.  The specific numbers need not be included in the Complaint. Defendant also disputes whether the Declaration of Brian Platt contains admissible evidence. But the evidence provided in the Declaration is based on his personal observations from conducting discovery in this case, and the court has wide discretion in allowing evidence at this early stage of the litigation.  To the extent that Defendants seek to have the court exclude portions of the Declaration, the request is denied.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Utah's long-arm statute extends jurisdiction to the fullest extent allowed by the Due Process Clause of the

Fourteenth Amendment and is, therefore, coextensive with the due process analysis under the United States Constitution.  Utah Code Ann. § 78B-3-201(3).  Under the due process clause, A court may exercise jurisdiction over a defendant if (1) the defendant purposefully established "minimum contacts" with the forum, and (2) the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice.  *Old Republic*, 877 F.3d at 903.

Specific jurisdiction is case-specific.  *Old Republic*, 877 F.3d at 904.  Courts in the Tenth Circuit conduct a three-part analysis when considering specific jurisdiction: (1) whether defendants purposefully directed their activities at residents of the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of jurisdiction would be unreasonable.  *Id.*

The purposeful direction test ensures that an out-of-state defendant "'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person.'" *Id.* at 904-05 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In this case, NH alleges that the court has specific jurisdiction over Defendants based on their sales of infringing products in Utah.  NH submitted a Declaration of Brian Platt based on information learned from expedited discovery.  Based on NH's preliminary discovery, Defendants allegedly sold at least 132 infringing NH products to Utah customers using NH's trademarks and copyrighted images.  Danezen.com sold 91 allegedly infringing products to Utah residents, Optinaly.com sold  3 allegedly infringing products to Utah residents, and PrettyDiary.store sold 38 allegedly infringing products to Utah residents.  That evidence shows that each Defendant sold allegedly infringing products to customers in Utah.  And

11

NH's claims against Defendants are based, in part, on those sales as well as sales across the country.

In *Edizone, LLC v. Asia Focus Int'l Group*, 196 F. Supp. 3d 1222 (D. Utah 2016), the plaintiff accused the defendant of patent infringement by selling 37 infringing products to Utah residents through its website. The defendant argued that its sales were *de minimus* and that Utah residents searched out its website. This court disagreed because Utah residents accessed Defendant's website, provided Utah billing and shipping information with their orders, and the allegedly infringing goods were shipped to Utah residents in Utah. *Id.* at 5.

Similarly, in this case, while Utah residents accessed Defendants' websites and bought infringing products from each of the Defendants, Defendants billed Utah residents for the purchases and shipped the allegedly infringing products to Utah. NH's claims relate to those allegedly infringing sales.

Defendants present no argument that personal jurisdiction in Utah would not comport with traditional notions of fair play and substantial justice or that other factors render jurisdiction unreasonable. Defendants operate a worldwide business and it is clear that they have transacted business in Utah. There are few, if any, physical burdens that litigation in Utah places on them. It does not offend traditional notions of substantial justice and fair play to answer a Complaint in a state where they have had the privilege of doing business. Utah has a legitimate interest in protecting its citizens when more than 100 allegedly counterfeit products have been sold in the state. Defendants question Plaintiff's interest in bringing the case in Utah because Plaintiff is not based in Utah. However, that is not a relevant factor in determining whether the court has jurisdiction over Defendants. In addition, Defendants state that Arizona is their preferred jurisdiction for this case. But whether jurisdiction would also

exist in Arizona is not relevant to whether jurisdiction exists in Utah.  The court concludes

that this court has specific jurisdiction over Defendants because Defendants purposefully sold

allegedly infringing products to Utah residents, NH's claims arise out of those activities, and

the court's exercise of jurisdiction over Defendants would not be unreasonable.  Accordingly,

the court denies Defendant's motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

Based on the above reasoning, the court DENIES Defendants' Motion to Dismiss for

improper service and lack of personal jurisdiction and GRANTS Defendants' Motion to Set

Aside Default [ECF No. 28].

DATED this 29th day of October, 2020.

BY THE COURT:

Dale A. Kimball,
United States District Judge